## Middleton's Estate.

*Executors and administrators — Trusts and trustees — Commis-*
*sions—Same person as executor and trustee.*

Where a testatrix leaves an estate approximating $45,000 consist-
ing of the stocks and bonds of various corporations, and appoints
by her will a trust company as executor and as trustee for her two
unmarried daughters until their death or marriage, the trust com-
pany will be allowed a commission at the rate of five per cent. on
the principal of the estate at the time of the audit of its account
as executor, and this commission will· be deemed full compensation
for its services in the double capacity of executor and trustee.

Statement of Facts—Adjudication.    [66 Pa. Superior Ct.

Argued Nov. 9, 1916.    Appeal, No. 237, Oct. T., 1916, by Clara Middleton et al., from decree of O. C. Philadelphia Co., Oct. T., 1915, No. 141, dismissing exceptions to adjudication in Estate of Lydia A. J. Middleton, deceased.    Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.    Affirmed.

Sur account of the Commonwealth Title Ins. & Trust Co., Executor of Estate of Lydia A. J. Middleton, deceased.

By her will testatrix appointed the accountant executor, and also trustee for her two daughters, Clara Middleton and Susan G. Middleton, until their marriage or death.

GEST, J., filed the following adjudication:

The accountant in its accounting claims credit for commissions at the rate of 5 per cent. on the approximate sum of $45,000, to which Mr. Harrington, representing Clara Middleton and Susan G. Middleton, objected, maintaining that 3 per cent. would be a proper allowance.    The estate consists of two mortgages of $1,-500 and $3,000, respectively, shares of stock of the Pennsylvania Railroad, United States Steel Company, American Dredging Company, United New Jersey Railroad and Canal Company and bonds of sundry railroads, industrial corporations and public utilities companies, together with public loan of the State of Virginia; in all, seventeen different investments, together with jewelry, silverware and furniture specifically bequeathed, and four other assets appraised as of no value, but which may involve some care and responsibility.    These all belonged to the testatrix at the time of her death, and all remained intact except $3,000 bonds of the Sandusky Gas and Electric Company, which have been sold.

The entire balance for distribution, after deduction of the silver, household furniture, etc., specifically bequeathed, is given to the executor as testamentary trus-

tee under the will, in trust, as above mentioned, until the death or marriage of the two daughters of testatrix. This trust may continue for many years. It is impossible to say how long. But under the Act of March 17, 1864, P. L. 53, Stew. Purd. 1127, the executor and trustee must at this time receive a single commission, which shall be deemed full compensation for its services in the double capacity of executor and trustee. No matter how long the trust may continue, the trustee cannot at its termination charge any further commissions on the principal of the estate.

It may well be that a 5 per cent. commission on an estate of this size, distributable at once in specific and pecuniary legacies, would be excessive; but the Act of 1864 makes a material difference, as appears from the decisions, among which the auditing judge will refer to Davis's App., 100 Pa. 201; Barclay's Est., 2 W. N. C. 447; Roger's Est., 17 W. N. C. 29.

In O'Brien's Est., 23 D. R. 198, 59 Pa. Superior Ct. 19, a specific legacy of 175 shares of stock of a certain company was directed to be held in trust for five years for the son of the testator, at the expiration of which period the trustee was directed to transfer and deliver the stock to the son of the testator absolutely. The executor had no duty to perform than to hold the stock and collect and pay over the dividends. The executor was allowed $250 as compensation for his services in relation to said stock. This case, which is among those relied on by Mr. Harrington, is materially different from the case above.

The accountant, even if merely executor and charged only with the duties of administration during the year following the decedent's death and of distribution at its termination, would be entitled to 2 or 2½ per cent.; indeed, Stevenson's Est., 4 Wharton 104, seems to lay down the general rule that 2½ per cent. is a proper allowance for responsibility in all cases. See Sunderland's Est., 203 Pa. 155; Taylor's Est., 17 D. R. 395. Surely 3 per cent. would be a meagre allowance for the responsibility

and labor of the executor during the year of administration, and for that also which will continue thereafter for the lifetime of the cestui que trust. The will directs that reinvestments be made in legal securities, and it is not always easy to find mortgages that shall be satisfactory both as to security and rate of interest. Whether the Act of June 10, 1911, Sec. 2, P. L. 870, Stew. Purd. Supp. 219, imposes any further duty on the trustee is a question upon which the auditing judge hesitates to express an opinion, but the question is one that may well be considered by the trustee and its learned counsel.

Too much importance should not be attached to the fact that the securities have not been converted: Fitzpatrick's Est., 12 D. R. 730; Thewlis's Est., 15 D. R. 361; Holt's Est., 12 D. R. 205. In the last case, Judge ASHMAN said:

"The fact itself that investments continued to be held intact is sometimes indicative of a very high order of business ability in their custodian. The market may point to a decline in values on the one hand, or to a rise on the other hand, and the temptation to sell may be equally strong, although for different reasons in either direction; that the trustee yields to neither may be the result of a wise forecast, at the same time it may involve a severe mental strain. Another and very practical reason against the adoption of such a standard is in the incentive which it would hold out to an executor to convert his securities and by a show of activity increase his commissions. This evil was pointed out in Shunk's App., 2 Pa. 304, and is indeed self-evident. The earlier cases in Pennsylvania, Pusey v. Clemson, 9 S. & R. 203; Walker's Est., 9 S. & R. 223; Luken's Est., 47 Pa. 356, and Lloyd's Est., 82 Pa. 143, upon which the exceptant relies, fixed a lower rate of commissions than is allowed to-day, but they were decided when monetary conditions were very different from those which now prevail. The later authorities, almost without exception, justify us in holding that a commission of 5 per cent. on $45,000, which

55, (1917).] Adjudication—Opinion of Court below.

amount is somewhat in excess of the fund before us, was properly awarded."

The auditing judge is of opinion, upon the whole, that the executor is entitled to the commissions claimed. Our law proceeds upon the theory that executors, trustees and guardians should be reasonably and fairly compensated for their labor and responsibility, and it is to the interest of the cestui que trust that they should be. If the executor in this case had renounced its right to act as testamentary trustee, it would have been entitled to the usual executor's commission, and the substituted or succeeding trustee would then, at the termination of the trust, charge and be entitled to receive another commission.

The law provides that one commission shall be charged now that shall compensate the services of the accountant in both capacities, and there is no apparent reason why the executor-trustee should be paid a smaller sum.

LAMORELLE, J., filed the following opinion on exceptions to the adjudication:

It would appear to be well settled in this State, where the amount is not in dispute, that an executor is entitled to his commissions because he qualifies and at the time he qualifies. In Sweatman's Est., 17 D. R. 594, testator had provided that each of his three executors should receive the sum of $6,000 "in lieu of all commissions." One of them died four months after he qualified, and this court, in its opinion, said:

"And when the executor once qualified as executor he became entitled to some compensation—whether little or much is immaterial. His death did not deprive his estate of his right to what had been earned, and it was in lieu of that compensation that he was given his legacy."

In a per curiam opinion, the Supreme Court said, in 223 Pa. 552:

"The order dismissing the exceptions to the adjudication is affirmed, for the reasons stated in the opinion of the learned judge of the Orphans' Court."

60          MIDDLETON'S ESTATE.

It would appear to be equally well settled that a trustee is not entitled to his commissions until the trust terminates or his relation therewith ceases.

In Bosler's Est., 161 Pa. 457, it appeared from the report of the auditor that the trustee had taken credit for commissions amounting to upwards of ten thousand dollars, and had depleted the estate to this extent. It was held that it should return these commissions to the estate, with interest thereon. In a most exhaustive report, the exceptions were dismissed, and the Supreme Court, in a per curiam opinion, said:

"All that can profitably be said, in relation to the questions involved in this case, will be found in the clear, concise and very satisfactory report of the learned auditor. We are quite content to adopt his opinion and affirm the decree thereon."

It is said in many cases that the amount of work and its character are to be considered in arriving at a conclusion as to what compensation the fiduciary is to be paid. The cases are reviewed in Harrison's Est., 217 Pa. 207, wherein Mr. Justice MESTREZAT, in delivering the opinion of the court, at page 209, says:

"It will be observed, therefore, that the rule as to commissions in all cases is compensation for the responsibility incurred and the service and labor performed. In arriving at the compensation to which a trustee in any capacity is entitled, it is necessary to consider the amount of the estate, the labor performed and the responsibility imposed. These are all elements which enter into and determine not only the amount of the compensation, but the right to compensation at all. It also necessarily follows that if there has been no service performed nor liability incurred by a trustee, he is not entitled to and should not receive any compensation whatever. The onus is upon him, before he can demand compensation for services, to show to the satisfaction of the court a responsibility incurred and services performed in the execution of the trust."

In the present case, one and the same person is both executor and trustee. Under the provisions of the Act of March 17, 1864, P. L. 53, in all cases where the same person shall fulfill the duties of executor and trustee, it is unlawful for him to charge or receive more than one commission, which single commission is to be deemed full compensation for his services in the double capacity in which he acts. The difficulty lies in the application. To say that one commission is to be paid in one amount and at one time, and that time to be when the executor fulfilled his duties as such, would seem to run counter to the above quoted authorities, because in such cases the auditing judge can at best but guess as to what services are to be performed. In the case where a corporation is concerned, there is no hardship in allowing a certain sum when its account as executor is audited and a further sum when the trust has terminated, provided the total charge be not in excess of what is a proper commission for the entire service. To thus interpret the act, however, would be unfair to an individual, because his estate and not he would receive the compensation for his services as trustee, unless the trust terminated in his lifetime.

In the present case, the record does not disclose that any testimony was offered. The auditing judge, however, took under consideration the objection made to an allowance of 5 per cent. on an estate of approximately $50,000, a corporation being both executor and trustee, and his summary would appear to be based on the items in the account and possibly on the statements of counsel. He held that but one commission could be allowed, that it must be allowed in a lump sum and at the time of the audit of the executor's account. The commission he fixed at 5 per cent., while admitting, however, that if the corporation was not also trustee, this rate would seem to be in excess of what should be charged under all the circumstances of the case.

It is well settled that the finding of an auditing judge,

both as to commissions and counsel fees, will not be disturbed, unless there be manifest error. (See Fisher's Est., 25 D. R. 362; Bergdoll's Est., 25 D. R. 102, and cases therein cited.) That there is authority for the ruling is found in the cases cited by him.

In Roger's Est., 17 W. N. C. 29, the executor, who was also testamentary trustee, was allowed a commission of 5 per cent. on $70,000. Judge PENROSE, who delivered the opinion of this court, saying in effect that an allowance of not over 3 or 3½ per cent. would be ample if the accountant's connection with the estate ceased at the settlement of his account; but that a different rule appeared to have been established where the estate is awarded to him as trustee and where, under the Act of 1864 (supra), but one commission was to be allowed, and also that the labors required of him in the latter capacity, that is, of trustee, would have to be taken into consideration.

Just how the amount of the labor to be performed can be determined by anticipation is not apparent.

In Milliken's Est., 36 Pa. C. C. R. 187, it was held that where the same persons were both executors and trustees, they were entitled to deduct their commissions in their account as executors, and that payment of such commissions at the time was proper. Moore's Est., 13 D. R. 137, was cited as authority, wherein the action of the lower court, which stated in its opinion, "we see no reason why the payment of the executors' commissions should be postponed to the termination of the trust, which lasts during the lifetime of the three sons of the testator," was in effect affirmed by the Supreme Court (Moore's Est., 211 Pa. 343), in that such ruling was upheld and the language of the opinion not criticised.

The auditing judge has set forth at length in his adjudication the terms of the trust, the services already performed and the possible duties which the trustee may be called upon to perform in the future, and, as the authorities sustain his findings and his rulings, the excep-

55, (1917).] Assignment of Error—Opinion of the Court.

tions are dismissed, and the adjudication is confirmed absolutely.

*Error assigned* was decree dismissing exceptions to adjudication.

*Avery D. Harrington*, for appellant, cited: Harrison's Est., 217 Pa. 207; Montgomery's App., 86 Pa. 230; Davis's App., 100 Pa. 210; Barclay's Est., 2 W. N. C. 447; Roger's Est., 17 W. N. C. 29; Sinnott's Est., 224 Pa. 333.

*Horace M. Rumsey*, for appellee.

PER CURIAM, March 13, 1917:

Every question raised by the assignments of error is fully answered in the opinion of the Orphans' Court in the adjudication of this estate, and in the opinion filed in dismissing the exception to that adjudication.

For the reasons therein given, the decree below is affirmed.